## EMERY P. SLATE

*v.*

## GEORGE C. EISENMEYER.

1. CONTINUANCE—*affidavit for, how construed.* It will be presumed that the statements in an affidavit for a continuance are as favorable to the applicant as the facts will warrant, and, as in the case of a pleading, all intendments, so far as the affidavit is equivocal or uncertain, must be taken against it.

2. EVIDENCE—*affidavit for continuance admitted.* The court is not bound to admit in evidence, on the trial, an affidavit for a continuance which has been admitted to avoid a continuance, without regard to the competency of its contents as evidence. When such affidavit, if admitted, could not have affected the general result, upon a trial, there is no error in excluding the same.

3. The admission of an affidavit to avoid a continuance does not make facts therein stated, which are improper evidence, admissible on the trial. The true test is, could the witness, if present, be permitted to testify to the facts. If not, they should be excluded from the jury, thus putting the affidavit on an equality with the witness.

4. SAME—*to show extent of possession.* A plaintiff in a possessory action, where there is no apparent actual possession of a portion of the premises, may, for the purpose of showing the extent of his possession, put in evidence the deeds or title papers under which he claims. This doctrine is held applicable alike to actions of trespass and forcible detainer. But this principle has never been so extended as to permit a defendant in forcible detainer to introduce such papers to show an adverse title in himself.

5. SAME—*in forcible detainer.* Where a husband, under a writ of possession against him, surrendered the possession of land to the plaintiff, and leased

the same premises of the plaintiff, and a grantee of the wife of the lessee, when sued in forcible detainer, in an affidavit for a continuance stated that he expected to prove by the wife, under whom he claimed, that she purchased the land in dispute from the "Chalfin heirs," who gave her peaceable possession, and that she, on her conveyance, gave the defendant peaceable possession, which was long before the commencement of the suit: *Held*, that the facts stated were too indefinite and uncertain to make the affidavit evidence. If the possession existed in the "Chalfin heirs" when the grantor's husband leased the premises, that should have been stated.

6. PAROL EVIDENCE—*to prove title to land*. Conveyances of land can not be established by verbal testimony, except in the case of lost or destroyed deeds.

APPEAL from the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. TANNER & WILBANKS, and Mr. H. C. TALBOTT, for the appellant.

Mr. WILLIAM WINKELMAN, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of the Monroe county circuit court, rendered. at the September term, 1877, as of the March term of the same year, in an action of forcible detainer in favor of appellee, and against appellant, for the recovery of certain premises containing $10\frac{85}{100}$ acres, and being a part of what was known both as the "Chalfin farm" and "Wiswell farm."

It appears that in 1872, while Wiswell and his family were residing on this farm, the premises were sold under a deed of trust and appellee became the purchaser; that upon Wiswell refusing to give possession, appellee brought an action of ejectment against him, in which he recovered a judgment for the premises and an order for a writ of possession ; that having sued out the writ and placed it in the hands of an officer, he accompanied him to the place for the purpose of receiving possession. On arriving there Wiswell expressed a readiness to surrender the premises, but upon further consultation, Wis-

well, on behalf of himself and wife, entered into a written
agreement with appellee with respect to the further occupancy
of the farm.   The agreement is in these words:

"In consideration of Amasa Wiswell and Margaret Wis-
well, his wife, having given and hereby agree to give and
deliver to George C. Eisenmeyer the possession of the house
and premises now occupied by said Wiswell and family,
in the county of Monroe, and State of Illinois, known as the
'Wiswell farm,' on the 1st day of September, 1874, said
Eisenmeyer hereby agrees to let said Margaret Wiswell have
the wheat now growing on said farm and sowed by Amasa
Wiswell, and also pay to Margaret Wiswell, on the day such
possession is delivered, the sum of $100.   This to be a final
settlement between said Amasa and Margaret Wiswell and
said Eisenmeyer as to all matters concerning the farm afore-
said and any payments heretofore promised to be made.

April 17, 1874.                    GEORGE C. EISENMEYER.
                                   AMASA WISWELL."

The matter having been thus satisfactorily arranged, appel-
lee and the officer returned, leaving Wiswell and his family in
possession of the premises.   At the expiration of Wiswell's
term under the agreement, he refused to give appellee posses-
sion as therein provided.   Appellee, thereupon, tendered Mrs.
Wiswell the $100 which he was to pay her on receiving pos-
session, and brought an action of forcible detainer against Wis-
well to recover possession.   Appellee obtained judgment, and
having again sued out a writ of possession and placed it in the
hands of an officer for execution, proceeded with him to the
premises to receive possession.   But on arriving there a new
complication arose.   Mrs. Wiswell claimed to be the owner
and in the exclusive possession of a part of the premises,
being the same now in controversy, and declined to surrender
them.

This complication of affairs seems to have presented to the
minds of appellee and the officer a legal problem of so serious
a character that they did not see their way clearly in proceed-

ing further under the writ, and appellee finally determined to suspend further action against the husband and institute similar proceedings against the wife, which he accordingly did, and finally obtained a judgment against her, but while these proceedings were pending against her the possession of the premises was transferred by her to appellant, and hence the suit against him.

Appellee testifies that, at the time he accompanied the officer for the purpose of taking possession of the premises under the writ of possession in the ejectment case, Wiswell gave him possession of the farm, including the 10 $\frac{85}{100}$ acres in controversy, and that Mrs. Wiswell received under the contract above recited from $1100 to $1200 worth of wheat, and, also, that he let Wiswell have the piece of land in controversy for potatoes.

It is further shown, by the testimony of Nick. Welsh, who had known the Wiswell farm for sixteen years, that the piece of land in controversy was a part of it, and had always been inclosed by a fence until lately, and that Wiswell had used it for the last six or seven years, except the last year he understood Slate had it. None of the facts above recited are at all controverted by any opposing evidence.

It is true, some of the facts we have stated are controverted by counsel in their argument, yet the court, in arriving at a conclusion, can, of course, only look to such facts as appear of record. From the foregoing it clearly appears, then, that at the time of executing the agreement of April 17, 1874, Wiswell, with his family, was in the actual possession of the farm known as the Chalfin or Wiswell farm, of which the premises in controversy constitute a part; that by virtue of the contract, he, on that day, became the tenant of appellee for a definite term, expiring on the 1st of September following; that at the expiration of the term, Wiswell refused to surrender the premises to appellee, and that Wiswell and those acting in concert with him have from thence hitherto kept appellee out of possession. This is the case made by appellee.

Previous to the trial, appellant, upon his own affidavit, made an application for a continuance of the cause on account of the absence of Margaret Wiswell. It does not appear that the court ever passed upon the sufficiency of the affidavit, but the record recites the fact that the affidavit was, in pursuance of the statute, admitted by the plaintiffs. Upon the trial of the cause, appellant offered in evidence the affidavit, which, upon objection of appellee, was excluded from the jury, and this is assigned for error. That portion of the affidavit which sets forth the facts proposed to be proved by the witness is as follows:

"That this affiant expects to prove by the said Margaret Wiswell that she never rented, leased, sold or conveyed, or contracted with the said George C. Eisenmeyer for any of the lands described in the complaint, either for the possession, reversion, remainder, or otherwise, or with any person or persons for him; and he expects to prove further, by said witness, that she purchased the lands described in complaint in this cause from the Chalfin heirs—that is to say, from Samuel Chalfin and Harriet Horine, former owners of said land; and that they gave her peaceable possession of the lands described in the complaint in the forcible detainer suit as aforesaid; and that she never, after her purchase of said land, gave any person or persons any authority or right to rent, lease or to deliver the possession of the said land aforesaid to the said George C. Eisenmeyer or anybody else; that she held peaceable possession of the same until she sold the said lands described in the amended complaint in this cause to Emery P. Slate, as by her deed to him will show; and immediately on the sale of the said land to Slate, that she gave to said Emery P. Slate peaceable possession of the same; and that the said Eisenmeyer never owned or had any title or the right to the possession of said land or any part thereof; and that upon the delivery of the peaceable possession of said lands to the said Slate, he paid her the full amount of the consideration expressed in her deed to him, and that she gave the

peaceable possession of the said lands in controversy long before the commencement of the suit in the above entitled cause."

The only matter set forth in this affidavit that can reasonably be claimed to have any bearing on the issues involved in the suit, are the facts that the peaceable possession of the premises in controversy was given to Margaret Wiswell by the Chalfin heirs, and that she held the peaceable possession of the same till she sold to appellant, at which time she transferred the possession to him, and that this was long before the commencement of the suit. For the purpose of passing upon the questions raised by the assignment of error, it can not be assumed that if the witness were present she would testify to anything more than is stated in the affidavit; and it must be presumed that the statements in the affidavit are as favorable to appellant as the real facts would warrant; and therefore, as in the case of a pleading, all intendments, so far as the affidavit is equivocal or uncertain, must be taken against it.

Viewing the affidavit in the light of these familiar principles, there is certainly nothing in it that could have at all affected the case made by appellee, or in any manner have strengthened his own case by allowing it to go to the jury, and, therefore, appellant was not injured or prejudiced by excluding it.

Appellant proposed to show by the witness that she obtained possession of the premises from the Chalfin heirs *long* before the commencement of the suit, but how long, is not stated.

"Long" is a very indefinite term. The actual duration of time expressed by it depends pretty much altogether upon the circumstances under which it is used or the subject matter to which it is applied. It may mean a minute or a hundred years, according to circumstances. Whether the possession of the Chalfin heirs claimed to have been given to Mrs. Wiswell, and subsequently transferred to appellant, would have had the slightest effect upon the case made by appellee, depended altogether upon whether such possession existed at

the time of the agreement of April 17, 1874. If appellant had proposed to show that the Chalfin heirs at that time were in the possession of the premises, it would have presented quite a different question. To have proved that would have directly rebutted the hypothesis upon which appellee's case rests,—namely, that on that day Amasa Wiswell, being in the actual peaceable possession of the premises in controversy, by a contract, in writing, surrendered the same to appellee, and became his tenant. But, on the other hand, to have simply shown that the Chalfin heirs, by some means or other after that time, without the consent of appellee, obtained possession of the premises and transferred the same to appellant, would not have presented the slightest defence, and it must be presumed, according to well recognized principles, that nothing more than this could have been shown; otherwise, it would have been so stated in the affidavit.

It seems to be claimed, however, that inasmuch as the appellee had admitted the affidavit in order to prevent a continuance, it then became a matter of right to have it go to the jury, without regard to the competency of its contents as evidence. A fair construction of the statute does not warrant this conclusion.

The statute should not be so construed as to make it imperative on the court to permit an affidavit to go in evidence which contains matter that is impertinent or does not tend to prove the issue. Nor could it have been intended by the legislature to deprive a party of the right to question the competency of the facts proposed to be proved by the absent witness merely because the affidavit has been admitted to avoid a continuance. Nor could it have been intended to make facts, merely because they are set up in an affidavit and admitted for the purpose of a trial, legitimate testimony, which, if offered to be proven by the witness on the stand, would be rejected as incompetent. It is but reasonable, therefore, to suppose that the legislature intended that where a party, for the purpose of a trial, admits an affidavit for a continu-

ance, he will be held to have admitted the facts in the affidavit, subject to his right to question their competency.

This construction of the statute places the affidavit upon an equality with the witness. It is made to speak on the trial instead of the witness; but, like the witness, it can only speak such facts as are competent to prove the issue. Any other construction of the act would force a party, in all cases where the court erroneously holds an affidavit sufficient, to either submit to an unjust and sometimes ruinous continuance, or to the penalty of having irrelevant facts put in evidence against him without the right of questioning their competency. It is true the court must necessarily pass upon the competency of the facts in determining the sufficiency of the affidavit. But that is always done without argument in advance of the trial, and is uniformly, to a great extent, an *ex parte* determination.

Suppose, in the hurry of business, the court, upon a casual examination, concludes the facts proposed to be proved are material, and the opposite party, to prevent a continuance, admits the affidavit, but the court, upon further consideration, becomes satisfied that the facts in the affidavit are not competent evidence,—is the court bound to allow the facts to go to the jury merely because the affidavit has been admitted? We think not. Often an affidavit, as in this case, states some facts that are beyond all question improper to go to the jury; yet, can it be seriously maintained that these facts must, nevertheless, be put in evidence merely because, for the purpose of avoiding further delay, the affidavit has been admitted? Certainly not. And yet, if it is proper for the court to exclude, on the trial, some of the facts on the ground of incompetency, why not all, if the court should, on further consideration, become satisfied that all are incompetent?

The exclusion of the affidavit from the jury was in effect a denial of the continuance upon the grounds stated in it, and if the affidavit was insufficient, as it clearly was, there was no error in doing so.

In the case before us, most of the facts proposed to be proved by the witness related solely to the question of title, which was not at all involved in the controversy, and even if the title had been involved, the evidence would clearly have been inadmissible. Nothing is better settled than that conveyances of land can not be established by verbal testimony, except in the case of lost or destroyed deeds, and no such case as that was presented by the affidavit.

So there can be no pretence for the claim that the affidavit was improperly excluded, so far as it related to facts touching the question of title. And as we have already found that the facts proposed to be shown, relating to possession, are so vague and uncertain with reference to time and circumstances as to be without any appreciable probative force, it follows there was no error in excluding the affidavit from the jury. The only tendency it could have had, if admitted as a whole, would have been to mislead the jury.

Appellant also offered in evidence a deed to himself for the premises in controversy, executed by Margaret Wiswell, and her husband, Amasa Wiswell, dated the 4th day of December, 1875, which, on objection of appellee, was excluded from the jury. And this is also assigned for error. It has been held in this court, in a number of cases, that a plaintiff in a possessory action where there is no apparent actual possession of a portion of the premises, may, for the purpose of showing the extent of his possession, put in evidence the deeds or title papers under which he claims. And this doctrine is held applicable alike to actions of trespass and forcible detainer. But this principle has never been so extended as to permit a defendant in an action of forcible detainer to introduce conveyances or other title papers which would show an adverse title in defendant. On the contrary, it has been held in a number of well considered cases that such evidence is not admissible. Nor can a case be taken out of the operation of this rule by counsel stating that the title papers are offered merely for the purpose of showing the extent of the defend-

ant's possession.    If defendant in such case relies upon possession in himself or another at the time of the injury complained of, it must be shown by evidence other than his title papers, and when shown *aliunde* it is just as available without the title papers as with them.    *Huftalin* v. *Misner*, 70 Ill. 205; *Doty* v. *Burdick*, 83 id. 475.

It clearly follows from the above authorities, and many others that might be cited, that the court below properly excluded the deed in question from the jury.

It is also urged that the court erred both in the giving and refusing of instructions.    We see no substantial objection to the instructions given, and are of opinion that the others were properly refused.    If any error was committed it was in favor of appellant.    But even if an error had been committed in this respect, under the circumstances of the case we would not feel warranted in reversing for that reason.

In the light of the facts proven and all that were offered to be proved, the law is so manifestly with appellee that we would not be justified in reversing the case for any of the errors assigned, even if there was no question as to their existence.    Whatever rights appellant may have to the premises in controversy they must be enforced in some other form of action.

Perceiving no error in the proceedings of the court below, the judgment must be affirmed.

*Judgment affirmed.*