LOUISVILLE, EVANSVILLE & ST. LOUIS CONSOLIDATED RAILROAD COMPANY

v.

WILLIAM LEE.

*Railroads—Negligence—Injury to Horses—Unlawful Rate of Speed—Signals—Evidence—Instructions—Par. 68, Chap. 114, Starr & C. Ill. Stats.*

Par. 68, Chap. 114, Starr & C. Ill. Stats., touching signals, is applicable only to cases where persons are approaching and about to pass over a highway crossing, and not to persons upon roadways parallel with the railroad line, not intending to cross the same.

[Opinion filed March 17, 1893.]

APPEAL from the Circuit Court of Jefferson County; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

Mr. C. H. PATTON, for appellant.

Mr. W. H. GREEN, for appellee.

MR. JUSTICE SAMPLE. The appellee's team of horses were injured in a collision with appellant's engine.

The declaration contains four counts, which base the cause

of action upon the negligence of the appellant in running its train through the city of Mt. Vernon at an unlawful rate of speed, and in failing to ring a bell or sound a whistle before reaching public crossings, as required by law. The evidence shows that appellant's road is laid in Park avenue, a street in said city along which also is a public thoroughfare, intersecting with which is Casey avenue, near the place where the accident occurred; that on the 21st day of April, 1892, the appellee was driving his team, hitched to the running gears of a wagon, south along said avenue, in order to go to Plummer's lumber yard for a load of lumber; that as he got to or near Casey avenue the passenger train of appellants, going north, came onto Park avenue on a curve in the track about a block south of Casey avenue. There is much evidence to show, and we can not say the jury were not justified in finding, that the train was running at a high rate of speed, in excess, at least, of ten miles an hour, without ringing a bell or sounding a whistle. The appellee's team became so frightened as soon as the train was seen, about 250 yards away, that appellee got off the wagon, caught the team by the bridles and attempted to hold them, but they turned toward and got upon the track just ahead of the engine, were struck by it and so crippled by the collision that they had to be killed. It further appears from the evidence that this team was used to trains and had never been frightened at them before.

It further appears that Park avenue was in as good condition as any street in the city for public travel, having been filled with cinders, and that the route appellee was taking to reach his destination was a proper one, although he might have taken another which would not have brought him so near the railroad. In view of these facts we do not find that appellee was negligent in taking the route he did, or in the management of his team. The difficulty in this case does not arise in regard to the facts, but as to the law as applicable to those facts, as embodied in the first instruction given for appellee. The part of the instruction that raises the legal question is as follows:

" The plaintiff seeks to recover on the grounds, first, that the statutory signals for crossings were not given; second, that the train was running at a greater rate of speed than allowed by the city ordinance of Mt. Vernon. To recover on the first ground plaintiff must show by a preponderance of the evidence that the statutory signals were not given and that the failure to give such signals caused the injury."

Another instruction given for the appellee told the jury that it was the duty of appellant to sound the whistle or ring the bell at least eighty rods before reaching any street crossing, and keep the same ringing or whistling until such crossing was reached. The legal question involved is, was the appellant under the *statutory duty to appellee* to ring the bell or sound the whistle? The evidence shows that appellee was passing along a street parallel with the railroad track, with no purpose or intention of crossing the railroad track at any point. He was not approaching any crossing with a view of passing over the same. In the case of Williams v. The C. & A. R. R. Co., 32 Ill. App. 339, 342, it is said, in construing Par. 68, Chap. 114, Starr & C. Ill. Stats., 1935, which requires the ringing of a bell or sounding a whistle, that "the plain manifest object was to protect by a required warning those who might be about to cross the railroad over the highway, so that the danger of a collision at such crossings might be obviated."

While the facts in the above case involved the question of such statutory duty as to one in a field adjoining the railroad, but within eighty rods of a highway crossing, yet from the language of the foregoing opinion and the authorities cited in support of the conclusion reached, it would appear to include within its scope all cases where the person injured, in person or property, was not intending to pass over a railroad crossing.

The same case is reported in 135 Ill. 491. On page 496 the court say: "It is a fair construction of Section 68, as above quoted, that the duty then imposed upon railroad companies was intended for the benefit of travelers upon the public highway. If it were not so, why is the bell required to be

rung or the whistle sounded at a certain distance from 'the place where the railroad crosses or intersects a public highway?' The place here indicated is the intersection of a railroad with a public highway, and the persons whose safety and protection are contemplated by this phraseology are those who use the highway and those who are passengers upon the passing train." The only cases, so far as our research could discover, that hold such duty is imposed for the benefit of travelers on parallel highways within the prescribed distance, are Wakefield v. Conn., etc. R. R. Co., 37, Vt. 330, and Ransom v. C. St. P. M. & O. Ry Co., 62 Wis. 178. The general current of authority as shown by the citations in the 135th Ill. at page 497, is to the contrary, which is thought to be supported by the better reason, when the purpose of such statute is considered. The preceding section to that requiring the signals, is closely related to the one that imposes such obligation. It provides that outside of cities or incorporated towns or villages, and in those where required by the corporate authorities, "Every railroad corporation shall cause boards, well supported by posts or otherwise, to be placed and constantly maintained upon each public road or street, where the same is crossed by its railroad on the same level. Said boards shall be elevated so as not to obstruct the travel, and to be easily seen by travelers. On each side of said boards shall be painted in capital letters of at least the size of nine inches each, the words ' Railroad Crossing ' or ' Look Out for the Cars.' " This requirement being immediately followed with the imposition of the duty as to signals, clearly shows, in our judgment, that the protection designed by the legislature related to those who were approaching and about to pass over *highway* crossings.

If the legislature intended to protect a traveler passing along a parallel highway, who did not intend to cross the railroad track, why should such protection be limited to the distance within eighty rods of a highway crossing? Such signals would be of no more benefit to the traveler within such distance than at any other point on the highway. If such signals were considered a protection to him and essen-

tial to his safety within such distance, is it not reasonable to suppose that the legislature would have extended the benefit along the whole line of a railroad where it was paralleled by a highway? The statute makes no distinction between public crossings in a city and outside, as to the duty to ring a bell or sound a whistle. Hence the Williams case, *supra*, would seem to control this case. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*