## City of Aurora v. John H. Scott.

1. ADMISSIONS—*Opinions of Witnesses in Affidavits for Continuances.*—A party in admitting an affidavit to avoid a continuance, under section 25 of the practice act, does not admit the alleged opinions of the witness contained in it where the opinions would not be competent if

City of Aurora v. Scott.

the witness were present. Such opinions are incompetent and properly excluded.

2. WITNESSES—*How Interest May Be Shown.*—When interest disqualified a witness, proof of such interest was not confined to his cross-examination, and although our statute (R. S., Chap. 51, Sec. 1) has removed the disqualification, interest may still be shown to affect the witness' credibility, and by the same kinds of evidence, admissible to prove the fact when it resulted in his disqualification.

3. EVIDENCE—*City Contracts, in Actions for Personal Injuries.*— In an action against a city for injuries caused by an open ditch left by a contractor in a street in which sewers were being constructed, the contract under which the work was being done, and which contained a provision by which the contractors agreed to save the city harmless from all damages to person or property because of injuries received on account of such work, is competent as tending to show the city and its officers knew how the trenches ought to be filled, and to charge them with knowledge of the proper way to protect the public by filling such trenches, and as also tending to show that they were negligent in permitting the trenches to be filled without observing these precautions, and in opening the street to public travel while in such condition.

**Action in Case,** for personal injuries. Trial in the Circuit Court of Kane County; the Hon. CHARLES A. BISHOP, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed May 19, 1899.

W. J. TYERS, and ALSCHULER & MURPHY, attorneys for appellant.

HANCHETT & PLAIN, HOPKINS, THATCHER & DOLPH, and R. B. SCOTT, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

While John H. Scott was riding along Galena street, in the city of Aurora, upon a light wagon, on the evening of October 6, 1896, he was violently thrown to the street and injured. He sued the city to recover damages therefor, claiming his injuries were caused by the defective condition of the street and that the city was negligent in permitting it to be in that condition. The city in defense denied that it was negligent, and asserted that the injuries were attributable to plaintiff's lack of ordinary care for his own safety and to his contributory negligence. Upon a jury trial

plaintiff had a verdict and a judgment for $2,500, from which the city prosecutes this appeal. Defendant fractured his hip, is made lame for the rest of his life, suffered great pain for a long time, and received injuries to other parts of his body, and it is not claimed the verdict was excessive if he was entitled to recover.

Scott had lived at Kaneville, thirteen miles northwest of Aurora, many years. He was moving into Aurora. Galena street is the usual traveled road from Aurora to the west, and the one which Scott had almost invariably traveled in going between Kaneville and Aurora. In the fall of 1896, the city dug a sewer lengthwise along Galena street for several blocks. This sewer was south of the center of the street. Then it dug lateral ditches from the lot lines to the vicinity of the sewer. Those on the north side of the sewer came from the northwest, crossing the street diagonally. Each lateral ditch stopped about two feet from the sewer, and a tunnel was dug from that point to the sewer underneath the surface of the ground sufficiently large to enable a workman to connect the lateral pipe with the main sewer. The lateral ditches were then filled by scraping the dirt into them by the use of a machine drawn by a team of horses. The dirt so scraped in was heaped up, but was not tamped nor made solid, and the tunnels next to the sewer were not filled at all. This work was done for the city by Tole & Larkin, contractors. Just after the work was finished there was a heavy rainfall, and the earth settled rapidly, and its settling frequently left open holes in this street. When these were discovered from time to time the city soon thereafter caused the holes to be filled.

On September 28, 1896, Scott, being in Aurora, wished to go to his farm for a load of goods, and went to the place where he should enter upon Galena street and finding it open drove west upon it, and found it much torn up, and found it barricaded at the west end of the sewer. When he returned from the country with a load that night he did not enter by that part of Galena street, but passed north to Plum street, with which he was unfamiliar, and found it not

lighted or graded, but very muddy, and had difficulty in getting through, and had to take off part of his load. On October 6, he again started from Aurora to go to Kaneville after a load of goods. He designed to seek some other street than Galena to go out upon, but met a man from Kaneville who had just come in with a load who told him he had just come over Galena street and that it was bad but he could get through. The barriers had in fact been removed and the street opened to public travel. Scott then went over that street and found it rough and uneven by reason of the ridges and depressions over the lateral ditches. There was but one traveled track, and it was north of the sewer. He had a light wagon, drawn by one horse. The wagon was an ordinary three-spring wagon, the two rear springs running lengthwise of the wagon and the front spring crosswise. At Kaneville, Scott placed in the left-hand side of the wagon an upright book-case, and upon the right-hand side another book-case resting on its side. There were carpets and hay under and around the cases. These cases were properly tied to the wagon. There was a space of twenty-one inches between the cases which was filled with hay, etc. In front of the book-cases Scott placed a two-bushel basket filled with books. Other baskets of books and some fire wood were in the rear part of the wagon. The book-case, which rested upon its side, came thirty-eight inches above the bottom of the wagon box, and twenty-six inches higher than the regular wagon seat. Upon the front end of that case he put a cushion and upon that took his seat, with his body slightly turned toward the center of the wagon and his feet in the basket upon the books. Riding in that fashion he drove in safety to Aurora, and traveled for some miles upon a road newly graveled, with the gravel heaped up in the center, and crossed it from one side to the other several times without difficulty or harm to himself or his load. When he came to Aurora after dark he drove in on Galena street as usual. It was the only street with which he was familiar in that part of the city. It was being generally traveled that day. He had tried a street

north the week before with unsatisfactory results. The street next south of Galena street was occupied by a street car line, and Scott's horse was afraid of the street cars. He drove his horse at a slow walk along the one traveled track north of the sewer. The way was rough on account of the lateral ditches, which had been filled more than full and in some places had settled. They were angling to the northwest, so that the wheels on opposite sides of the wagon did not strike the elevations or depressions at the same time. Aside from this inconvenience no danger was apparent to him. We think the jury were justified in finding from the evidence that at the place where the accident happened the right fore wheel went into a hole ten or twelve inches deep in one of these lateral ditches or tunnels, and that corner of the wagon went down suddenly just as the rear wheel passed over an elevation equally high, and that plaintiff was thereby thrown from his seat to the ground and injured as before stated.

We have considered the evidence and conclude the jury was justified in finding the city was negligent in leaving its laterals and the tunnels in the condition we have described after it removed the barriers and opened the street to public travel. We can not say plaintiff was guilty of contributory negligence in driving upon that street at that time. It was his natural way from Kaneville to his new home. By removing the barriers the city invited public travel. Scott knew there had been barriers and knew they had been removed. He had passed along that street safely that morning. We think it a close question whether Scott was exercising due care in sitting upon the book-case in the position we have described while riding along this uneven street. But he had ridden safely in that way nearly thirteen miles and over the newly graveled road spoken of, and over part of this same sewered street. There is nothing to show he knew or had any reason to know the earth had not been tamped nor the tunnels filled, nor, indeed, that any such tunnels had been dug under the surface of the street, and therefore there is nothing to show that due care

City of Aurora v. Scott.

should have made him expect the existence of such holes as that which caused him to be thrown from the wagon. He traveled in the same general track many other teams had done that day. It may be he would not have been thrown off if he had been riding upon a wagon seat in its usual position; but many people find it necessary to drive upon streets upon the top of loads, and people with loads have a right to use the streets, and his experience that evening shows it was entirely safe for him to ride upon any ordinary street. We are unable to say the jury ought to have found that his riding upon that street at that time in that position upon the top of the book-case was a want of due care, or that another jury would so find.

Before the trial began defendant moved for a continuance on account of the absence of two witnesses, C. C. Lakin, one of the contractors who built the sewer, and Lee Lowry. The court ordered the case continued unless plaintiff would admit the witnesses, if present, would testify as stated in the affidavits for a continuance. Plaintiff made the admission, and the motion was denied. Defendant claims the continuance should have been granted. The suit was begun in November, 1897. The motion to continue was in May, 1898. The affidavits for the continuance showed that Lakin was in Rockford, and had for several months been engaged there in the important work on account of which it was claimed he could not then be spared to come to Kane county as a witness. The city had long been advised that he claimed he could not then attend the trial. It did not cause him to be subpoenaed. It is obvious it is not true that it was impossible for him to come to the trial. The work upon which he was engaged was being prosecuted for twenty-four hours every day and seven days every week. He certainly slept a part of the time, and when he did so, some one else attended to his important duties. No protracted absence would have been necessary. The city did not take his deposition. By the ruling of the court the city had the advantage of his evidence as fully as it saw fit to embody it in the affidavits. Section 25 of the practice act

does not entitle a party to a continuance if the affidavit is admitted by the opposite party. It is claimed defendant needed Lakin to help to prepare for the trial. It could consult him at Rockford, and did so; and we do not think a sufficient showing on that ground was made to require a continuance. This case may have been as important to Scott as Lakin's services at Rockford were to his employers there. It afterward appeared that Lakin was bound by his contract to protect the city of Aurora against this suit. If he was really a party in interest, and wished to protect his own interest, he knew of this suit long before and should not have entered into a contract at Rockford which would interfere with his presence at this trial. By the admission of the affidavits defendant had the benefit of Lowry's evidence, and no reasonable grounds were shown by the affidavit for believing his presence or deposition could not be procured by the next term. We think defendant has no just ground to complain of the ruling upon the motion to continue. When defendant afterward offered the affidavit of Lakin at the trial the court, upon objections by the plaintiff, excluded those portions of the affidavit wherein Lakin stated that the the street was " safe for public travel," and was not " left unguarded in an unreasonably unsafe condition," etc. The statute only authorizes so much of the affidavit to be read to the jury as states that which the witness, if present, would, under the rules of evidence, be permitted to state upon the witness stand. (Slate v. Eisenmeyer, 94 Ill. 96; Chicago City Railway Co. v. Duffin, 126 Ill. 100.) This was not a case for the opinion of experts as to whether the street was safe or unsafe, nor whether it was " not left unguarded in an unreasonably unsafe condition." The witness should have described the street, whether it was level or otherwise; whether there were ridges, holes, tunnels, etc., and their height, depth, etc., and it would have been for the jury to say whether it was safe or unsafe in the condition described. We think the opinions of the witness were incompetent and were properly excluded.

In rebuttal plaintiff offered a part of the contract between

the city and Tole and Lakin for the building of said sewer, which shows that Tole and Lakin had agreed to save the city "from all damages to person or property because of injuries received by the work which the contractor is doing," and to defend the city against any suit for any such injuries, and to pay any judgment rendered against the city in any such suit. The affidavit as to Lakin's testimony had been read in evidence, and this was offered to discredit him by showing his interest in the event of the suit. The offer was expressly limited to that purpose. The objection urged is that such evidence was not competent till the witness had been cross-examined upon the subject and denied his interest, and that when the plaintiff agreed to admit the affidavit to avoid a continuance he waived the right to cross-examine, and therefore put himself in a position where he could not impeach or discredit the witness. It is true statements by the witness, either oral or in writing, contradictory to his evidence, can not in such cases be shown, because the foundation therefor can only be laid by a cross-examination. C. & A. R. R. Co. v. Lammert, 19 Ill. App. 135; North Chicago Street Railway Co. v. Cottingham, 44 Ill. App. 46; In re Noble, 124 Ill. 266.

If Lakin had been present and had been cross-examined upon the subject of his interest, while he could have been asked whether he had entered into a contract with the city, yet a question calling for the contents of the writing would have been objectionable, and if an objection had been interposed that the writing furnished the best evidence of its provisions that objection must have been sustained. Notwithstanding the presence of the witness, the objection would have driven plaintiff to prove Lakin's interest by the contract itself. Therefore a cross-examination of said witness was not necessary in order to show his interest. When interest disqualified a witness, proof thereof was not confined to cross-examination. (1 Greenleaf on Evidence, Sec. 423.) Though our statute (R. S., Chap. 51, Sec. 1,) has removed the disqualification, it still permits interest to be shown to affect credibility. No reason is perceived why the

interest of the witness may not still be shown by the same kinds of evidence admissible to prove the fact when it resulted in disqualification.

In his case in chief, plaintiff was permitted, over defendant's objection, to read in evidence that part of the contract already referred to, which showed the city required the trenches to be filled with earth and thoroughly compacted by careful ramming and pounding, and required the earth to be deposited in layers not exceeding nine inches in thickness and each of said layers to be well rammed. It is obvious that if this requirement had been observed Scott would not have received this injury. We think this evidence was competent as tending to show the city and its officers knew how the trenches ought to be filled. It tends to charge them with knowledge of the proper way to protect the public in filling such a trench. It tends to show they were negligent in permitting the trenches to be filled without observing these precautions and in opening the street to public travel while in such condition.

We do not think the instructions given for plaintiff subject to serious criticism. The court very fully instructed the jury for defendant in twenty-six instructions. Finding no substantial error in the record the judgment is affirmed.